IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PRESTIGE OILFIELD SERVICES, LLC,

    Plaintiff,

v.                                                                                       Civ. No. 18-1173 GBW/GJF

DEVON ENERGY PRODUCTION
COMPANY, L.P.,

    Defendant.

## ORDER GRANTING MOTION TO TRANSFER VENUE

THIS MATTER comes before the Court on Defendant's Opposed Motion to Transfer Venue to the Western District of Oklahoma. *Doc. 5*. Having reviewed the Motion, the attendant briefing (*docs. 10*, *15*), and all applicable law, the Court hereby GRANTS Defendant's Motion for the reasons detailed below.

### I.    Background

This case arises out of a contract (hereinafter, "the Agreement") between Plaintiff Prestige Oilfield Services, LLC ("Prestige") and Defendant Devon Energy Production Company, L.P. ("Devon"). *See doc. 1-1* at 1–2. Prestige acted as a contractor, providing Devon with certain services and materials including salt water removal, disposal services, and equipment. *See doc. 5* at 2.

The parties are in agreement as to virtually all facts relevant for purposes of the instant Motion. *See doc. 10* at 2 ("Prestige agrees with the majority of the factual statements set forth by Devon."). Prestige and Devon entered into the Agreement on October 12, 2012. *Doc. 5* at 2. Their dispute arises out of services and materials provided pursuant to the Agreement. *Id*. Specifically, Devon refused to pay Prestige for its services and materials after uncovering alleged irregularities and errors in Prestige's invoices. *See doc. 1-1* at 2; *doc. 5* at 1. Prestige responded by recording liens against Devon's properties that were benefited by its services and materials. *Doc. 1-1* at 2.

Prestige filed suit in the Fifth Judicial District of New Mexico on November 12, 2018. Devon removed the case to this Court on December 13, 2018, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Doc. 1*. Devon then filed the instant Motion to Transfer Venue on December 14, 2018. *Doc. 5*. Devon urges the Court to transfer the case to the Western District of Oklahoma based on the forum-selection clause contained in the Agreement. *See id*. at 3. Prestige does not deny the existence or enforceability of the forum-selection clause, but argues that the forum-selection clause is limited in scope and does not apply to the parties' disagreement. *See generally doc. 10*.

**II.      Legal Standard**

The Supreme Court has held that "a forum-selection clause may be enforced by a motion to transfer under § 1404(a)." *Atlantic Marine Constr. Co. v. United States Dist.*

2

*Court*, 571 U.S. 49, 52 (2013). Section 1404(a), the federal change of venue statute, permits a district court to "transfer any civil action to another district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Where a valid forum-selection clause exists, the § 1404(a) motion should be denied only under "extraordinary circumstances," and the plaintiff bears the burden of demonstrating that such circumstances exist. *Atlantic Marine*, 571 U.S. at 62, 64. The parties' private interests carry no weight in the analysis, so the district court "may consider arguments about public-interest factors only." *Id*. at 63–64. "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59–60 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

**III.　Analysis**

    I.　<u>Choice of Law</u>

As a preliminary matter, the parties disagree about what law the Court should apply to interpret the forum-selection clause. *See Presidential Hospital, LLC v. Wyndham Hotel Grp., LLC*, F. Supp. 1179, 1211 (D.N.M. 2018) (noting the distinction between *enforceability* of forum-selection clauses, which is determined by federal law, and *interpretation* of forum-selection clauses, which is an area of some confusion). Plaintiff urges the Court to apply Oklahoma state law to interpret the clause (*doc. 10* at 5), while

3

Defendant argues that interpretation of the Agreement is governed by federal common law (*doc. 15* at 5).

A federal court sitting in diversity applies state substantive law and federal procedural law. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Whether forum-selection clauses are considered substantive or procedural for *Erie* purposes is a "daunting question" that the Tenth Circuit has so far declined to answer. *Excell, Inc. v. Sterling Boiler & Mech.*, 106 F.3d 318, 321 (10th Cir. 1997) (quoting *Lambert v. Kysar*, 983 F.2d 1110, 1116 (1st Cir. 1993)). Instead, the Tenth Circuit has regularly found that there is no need to decide the *Erie* question because both federal and state law lead to the same outcome. *See id.* at 320 ("Because we believe there are no material discrepancies between Colorado law and federal common law on these matters…we find it unnecessary to decide the issue.") (internal citations omitted); *Presidential Hospital*, 333 F. Supp. at 1211 (describing the Tenth Circuit's avoidance of this issue).

For two reasons, it is ultimately unnecessary to determine whether the forum-selection clause in the Agreement is substantive or procedural. First, this Court finds that the Agreement's choice-of-law provision should be enforced in any event, meaning that Oklahoma law applies. Second, the contract principles that determine the resolution of this Motion are not materially different whether one applies federal common law, New Mexico law, or Oklahoma law.

The Agreement contains the following choice-of-law provision:

> In the event General Maritime Law of the United States is determined by a court of competent jurisdiction to be inapplicable,[1] and except as otherwise provided under the Articles "Independent Contractor," "Insurance," and "Indemnity and Defense" herein, the laws of the State of Oklahoma govern the interpretation of this Agreement and the rights of the parties under this Agreement and any amendments hereto.

*Doc. 5-1* at 10, § 12(B). Defendant's Motion thus presents "a layered choice-of-law question: what law governs the interpretation of a forum selection clause in a written agreement when that agreement also contains a choice-of-law clause?" *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 179 (3d Cir. 2017). As in *Collins*, interpretation of the forum-selection clause in the instant case is complicated by the fact that Plaintiff challenges the scope, not the enforceability, of the forum-selection clause. *See id.* at 181. In other words, Plaintiff argues that the forum-selection clause may well be valid and enforceable—but it is not applicable to the claims in this suit. *See doc. 10* at 2. It therefore falls to this Court to interpret the broader Agreement, in order to determine whether the forum-selection clause applies to claims brought under the entire contract or only to claims under a particular section.

Given the involved nature of the contract interpretation required in this case, and the absence of clear Tenth Circuit guidance, the Court adopts the Third Circuit's approach in *Collins* and applies the parties' choice of law to interpret the Agreement, including the forum-selection clause. This approach comports with the general rule

---

[1] Neither party has argued that General Maritime Law applies to the current dispute, nor does this Court find that General Maritime Law should apply to this billing- and lien-related action.

that "[i]ssues of contract interpretation are considered quintessentially substantive, rather than procedural, under *Erie*." *Collins*, 874 F.3d at 182 (internal quotations and citation omitted). Notably, the Tenth Circuit has also honored the parties' choice-of-law provision when interpreting a forum-selection clause in an international contract. *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir. 2006). The holding in *Yavuz* was explicitly limited to the international context:

> A forum-selection clause is part of the contract. We see no particular reason, *at least in the international context*, why a forum-selection clause, among the multitude of provisions in a contract, should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties.

*Id.* (citing Restatement (Second) of Conflict of Laws § 204(a)) (emphasis added). However, many of the rationales cited by the court are equally applicable to the case at hand. The *Yavuz* court noted at the outset that "when a court interprets a contract, as a general matter it applies the law that the parties selected in their contract." *Id.* at 427 (citing Restatement (Second) of Conflict of Laws § 187). Other relevant considerations included the freedom of sophisticated, commercial parties to negotiate their own terms and the value of predictability in choice of law and forum. *See id.* at 428–30. Following a review of Supreme Court precedent, the Tenth Circuit concluded that

> respect for the parties' autonomy and the demands of predictability in international transactions require courts to give effect to the meaning of the forum-selection clause under the chosen law, at least absent special circumstances.… [W]e now hold that under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision *as construed under the law specified in the agreement's choice-of-law provision*.

6

*Id.* at 430 (emphasis in original).

Prestige and Devon are both sophisticated parties, and the Agreement in dispute is a commercial agreement. In addition, the nature of the parties' disagreement over the scope of the forum-selection clause compels construction not only of the forum-selection clause itself, but of its relationship the Agreement as a whole. This endeavor is more properly—and more commonly—undertaken pursuant to substantive state law. Finally, neither party has argued that the choice-of-law provision is unenforceable under New Mexico law.[2] For these reasons, the Court finds that the choice-of-law provision contained in the Agreement should be enforced, and Oklahoma law controls interpretation of the contract including the forum selection clause.

In any event, the resolution of this Motion is governed by general principles of contract interpretation. Neither party has cited to cases suggesting that these principles are inapplicable, or applied differently, under the choice of law they respectively champion—Oklahoma or federal common law.[3] Thus, even if the choice-of-Oklahoma-law provision did not apply, application of these general principles would mandate the same result.

---

[2] Nor is the Court aware of any reason that the choice-of-law provision would be considered unconscionable or otherwise unenforceable under New Mexico law. *See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 108 N.M. 467, 470 (1989) (enforcing contractual choice-of-law provision and applying Kentucky law); *Flemma v. Halliburton Energy Servs.*, 303 P.3d 814, 820 (N.M. 2013) ("New Mexico…has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals.").

[3] Similarly, these general principles would apply under New Mexico law.

II.   Scope of Forum-Selection Clause

The parties' only real disagreement regarding the Motion before the Court is a narrow one: namely, whether the forum-selection clause in the Agreement applies to the claims raised in the Complaint. Plaintiff does not argue that the forum-selection clause is invalid, contrary to public policy, or unenforceable in any other respect. *See generally doc. 10*. Instead, Plaintiff argues only that the forum-selection clause contained in the Agreement does not apply to the contract generally, and therefore does not apply to the parties' dispute.

The forum-selection clause appears in Section 9, under the heading "Indemnification and Defense." It is the final item of the section and reads:

> Contractor agrees that exclusive venue for the resolution of any dispute with Company hereunder is the federal and state courts located in Oklahoma County, Oklahoma. Contractor waives any right to bring an action hereunder in another state, parish, county, or country.

*Doc. 5-1* at 10 (capitalization omitted). Plaintiff contends that this forum-selection clause applies only to claims brought under Section 9, i.e., claims having to do with indemnification and defense. *See doc. 10* at 3. Defendant argues that the clause, despite its placement in Section 9, was intended to apply to claims under the entire Agreement. *See doc. 15* at 7–10. Though the placement of the forum-selection clause gives rise to some doubts about its scope, the Court is ultimately persuaded by Defendant's argument that the term "hereunder," as used in the forum-selection clause, means "under the Agreement." *See id*.

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Scungio v. Scungio*, 291 P.3d 616, 622 (Okla. 2012) (quoting Okla. Stat. tit. 15, § 152 (2011)). "That intent is to be 'ascertained from the four corners of the contract,[4] and where the language is ambiguous, it will be interpreted in a fair and reasonable sense.'" *Id*. (quoting *Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.*, 160 P.3d 936, 946 (Okla. 2007)). "The construction of an ambiguous contract is a question of law for the court where the ambiguity can be clarified by reference to other parts of the contract, or where the ambiguity arises by reason of the language used and not because of extrinsic facts." *Id*. (quoting *Paclawski v. Bristol Laboratories, Inc.*, 425 P.2d 452, 456 (Okla. 1967)). When searching for the intent of the parties, "[w]ords used in one sense in one part of a contract are deemed to have been used in the same sense in another part of the same instrument, where the context does not indicate otherwise." *Barnes v. Townley*, 448 P.2d 468, 471 (Okla. 1968) (citations omitted). This canon is a well-settled rule of construction applied across jurisdictions including federal courts and under New Mexico law. *See United States v. Keach*, 480 F.2d 1274, 1284 (10th Cir. 1973) ("It is a well-settled rule of construction that where a word is used in one part of a document,

---

[4] Despite professing a limitation to the "four corners," the *Scungio* court stated that "[i]n addition, 'a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.'" *Scungio v. Scungio*, 291 P.3d 616, 622 (Okla. 2012) (quoting Okla. Stat. tit. 15, § 163 (2011)). This Court need not parse this possible inconsistency because the parties do not rely on any circumstances outside the text of the document.

9

the same word used later has the same meaning, unless the context clearly shows the contrary."); *Angel Fire Resort Operations, L.L.C. v. Corda*, 138 N.M. 50, 54 (N.M. Ct. App. 2005) (quoting *McLane & McLane v. Prudential Ins. Co.*, 735 F.2d 1194, 1195 (9th Cir. 1984)) ("we may presume that words have the same meaning throughout the contract"); *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 116 (2d Cir. 2014) (rejecting contract interpretation that would "cause[] the term to mean different things in different instances of its appearance"); *Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1121 (7th Cir. 1990) (internal quotation and citation omitted) ("unless a contrary intent is evident, words used in one sense in one part of a contract are deemed of like significance in another part"); *Midland Valley R.R. Co. v. Railway Express Agency*, 105 F.2d 201, 203 (10th Cir. 1939) (citations omitted) ("It is an inveterate rule in the construction of a written instrument that ordinarily the same word occurring more than once is to be given the same meaning unless the context indicates that it was used in a different sense.").

The Court agrees with Defendant that, where the term "hereunder" is used in other parts of the Agreement, it clearly refers to the entire contract. *See doc. 15* at 2–4 n.1 (Defendant's compiled list of all uses of "hereunder" in the Agreement).[5] For instance, in Section 8 ("Insurance"), the Agreement reads: "In the event Contractor or its insurer

---

[5] Page 6 appears to be missing from the attached exhibit (*doc. 5-1*, the Agreement) to Defendant's Motion. However, the Court relies upon Defendant's good faith recital (and the lack of any dispute by Plaintiff) of any clauses appearing on the missing page.

10

fails to perform any of its obligations *hereunder, relating to insurance or otherwise…*" *Doc. 5-1* at 7 (emphasis added). The subsequent qualifier makes it clear that "hereunder" is used to mean "under the Agreement," not merely "under this section." This definition is consistent with the other uses of "hereunder," all of which make more sense if "hereunder" refers to the entire contract. *See doc. 15* at 2–4 n.1. Moreover, the language of the Agreement appears to switch interchangeably between the phrases "obligations under this Agreement" (*e.g., doc. 5-1* at 5 in E(3), E(4)) and "obligations hereunder" (*e.g., id.* at 7 in C(6)), strongly suggesting that they have the same meaning. Having concluded that "hereunder" means "under the Agreement" throughout the rest of the Agreement, the "same meaning" canon indicates that "hereunder" means "under the Agreement" in the forum selection clause unless the "context … indicate[s] otherwise." *Barnes*, 448 P.2d at 471.

Plaintiff contends that the context does indicate otherwise. Specifically, it argues that, taken in context, the forum-selection clause "was clearly written to apply to claims brought by one party or the other, arising out of the defense and indemnification provisions of Section 9" because every other clause in Section 9 relates solely to Section 9. *See doc. 10* at 3. Therefore, Plaintiff asserts that "hereunder" in Section 9 means "under this section." Perhaps the strongest evidence in support of Plaintiff's interpretation is the placement of the forum-selection clause under the heading "9. Indemnification and Defense." *Doc. 5-1* at 7-10. However, as Plaintiff admits, the

contract precludes the use of that fact for interpretive purposes. As Section 11 makes clear: "Provisions of this Agreement have been labeled for the convenience of the parties and such headings are not to be utilized for such purpose of construing the meaning of any provision of this agreement." *Id*. at 10. Therefore, Plaintiff's contextual argument can relate only to the other content of Section 9, and not to its heading ("Indemnification and Defense"). *See doc. 10* at 6. Indeed, it does appear that the other clauses in Section 9 relate generally to indemnification and defense. However, the term "hereunder" appears in three places in Section 9—once in the forum selection clause and in two other clauses. In those other clauses, its meaning is clearly "under the Agreement," not "under this section." *See doc. 5-1* at 8. The clause at Section 9(B)(1)(h) reads:

> Any claim for damages or loss as a result of discrimination or harassment by personnel furnished by Contractor Group or any of their suppliers, arising out of or in connection with *any work performed or to be performed by Contractor hereunder*, as well as any such claims arising out of or in connection with the presence of personnel furnished by Contractor Group or any of their suppliers.

*Id*. Similarly, the clause at Section 9(B)(2)(h) reads:

> Any claim for damages or loss as a result of discrimination or harassment by personnel furnished by Company, arising out of or in connection with *any work performed or to be performed by Contractor hereunder*, as well as any such claims arising out of or in connection with the presence of personnel furnished by Company.

*Id*. As Defendant points out, replacing "hereunder" in these clauses with "under this section" would be illogical, as no work is to be performed by Contractor specifically

under Section 9.  *See doc. 15* at 10.  Thus, even considering the context of Section 9, it appears that the parties' intended meaning for "hereunder" in the forum selection clause was "under this Agreement."

The Court is not dissuaded from this conclusion by Plaintiff's argument that the choice-of-law provision in Section 12 ("Applicable Law") "shows that Devon knew how to make a clause applicable to the entire Contract if it intended to do so."  *Doc. 10* at 4.  It is certainly true that the choice-of-law provision is contained within its own section and uses the phrase "under this Agreement" instead of the less explicit "hereunder."  *See doc. 5-1* at 10.  The placement of the forum-selection clause in Section 9 is obviously a sub-optimal drafting choice, and Plaintiff's argument that Defendant knew how to draft more precisely carries some weight.  However, as noted above, the contract often uses "hereunder" and "under this Agreement" interchangeably.  This reality undermines a heavy reliance upon the particular language in Section 12.  In light of the meaning of "hereunder" elsewhere in the Agreement and within Section 9—a somewhat more specific contextual clue—and the Section 11 clause stating that headers should not be used to construe meaning, the Court is persuaded that the forum-selection clause was intended to apply to claims brought under the entire Agreement, not just to claims relating to Section 9.

Nor does this construction offend the Oklahoma statutory rule that contract terms should be interpreted according to their "ordinary and popular" meaning.  *See* 15

13

Okl. St. § 160.  According to Oxford Dictionaries, which "focuses on current language and practical usage," the primary definition of "hereunder" is: "As provided for under the terms of this document."[6]  This plain meaning definition comports better with Defendant's construction.  Similarly, Black's Law Dictionary defines "hereunder" as either "1. Later in this document" or "2. In accordance with this document."  Black's Law Dictionary 796 (9th ed. 2009).  This definition again supports Defendant's interpretation.  Concededly, an alternate meaning of the word "hereunder" is "Under this title, heading, etc."[7]  While this definition supports Plaintiff's preferred interpretation, it at best makes the "plain meaning" approach inconclusive and certainly does not overcome the result from the well-established "same meaning" canon.

Finally, Plaintiff invokes the principle of c*ontra proferentem*: where two constructions are reasonable, the contract should be interpreted against the drafter.  *See doc. 10* at 6.  "[I]n Oklahoma the rule of *contra proferentem* applies only as a matter of last resort, once the other common-law principles of construction…are applied."  *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, 468 F. App'x 816, 822 (10th Cir. 2012) (citing Okla. Stat. tit. 15, § 170).  *See also* Byron C. Keeling, *In the New Era of Oil and Gas*

---

[6] *Hereunder Definition*, Oxford Dictionaries Online, *available at* https://en.oxforddictionaries.com/definition/hereunder (last visited Feb. 5, 2019).  The secondary meaning is "Further on in a document," a definition for which neither party has argued.  Indeed, the forum-selection clause appears at the *end* of Section 9.

[7] *Hereunder Definition*, Oxford English Dictionary Online, *available at* http://www.oed.com/view/Entry/86209?redirectedFrom=hereunder& (last visited Feb. 5, 2019).  This is the third listed definition.

*Royalty Accounting: Drafting a Royalty Clause that Actually Says What the Parties Intend It to Mean*, 69 Baylor L. Rev. 516, 561 n.224 (2017) (citations omitted) ("The contra proferentem doctrine historically applies only as a matter of last resort—i.e., when a contract is ambiguous and other rules of contract interpretation are insufficient to permit a court to determine the parties' contractual intent."). In this case, the apparent ambiguity of the term "hereunder" can be resolved by reference to the rest of the contract and other rules of contract interpretation. There is therefore no need to reach the "last resort" of applying *contra proferentem*, nor does that canon of construction outweigh the countervailing principle that "the court should, as far as possible, place itself in the position of the parties when the contract was made, and to the extent that their mutual intention is ascertainable and lawful, give effect thereto." *King-Stevenson Gas & Oil Co. v. Texam Oil*, 466 P.2d 950, 954 (Okla. 1970) (citation omitted). Given the consistent meaning of the term "hereunder" throughout the rest of the Agreement, the parties' intention to apply the forum-selection clause to claims arising under the entire Agreement is ascertainable by reference to other canons of construction.

In addition, although neither the parties' briefing nor the Court's independent investigation has uncovered an Oklahoma state court case addressing this issue, "the contra proferentem doctrine generally does not apply in favor of sophisticated parties." Keeling, *supra* p. 14, at 561 n.224. Many courts have expressed doubts about the application of *contra proferentem* to contracts between sophisticated parties. *See, e.g.,*

*Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1372 (10th Cir. 2009) (internal citations and quotations omitted) ("The sensibility of the *contra proferentem* canon of construction…rests in large measure on an assumption of unequal bargaining strength between the seller and purchaser, supposing as it does the prototypical case of a large insurance company essentially dictating its terms in an adhesion contract to individuals with little bargaining power."); *Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997) (citation omitted) ("We decline to apply the doctrine of *contra proferentem* to this case due to the relatively equal bargaining strengths of both parties and the fact that Terra was represented by sophisticated legal counsel during the formation of the license agreement."); *Oxford Realty Group Cedar v. Travelers Excess & Surplus Lines Co.*, 229 N.J. 196, 208 (2017) (internal quotation and citation omitted) ("*Contra proferentem* is a consumer-protective doctrine only available in situations where the parties have unequal bargaining power."); *Catlin Specialty Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 342 (S.D.N.Y. 2014) (citations omitted) ("Contra proferentem does not apply where contracts are negotiated by sophisticated parties of equal bargaining power."). Both Prestige and Devon are sophisticated commercial entities of presumably equal bargaining power, and it is therefore highly uncertain that the doctrine of *contra proferentem* would apply to them even if the ambiguity could not be resolved by use of other contract principles.

    Lastly, Section 20 of the Agreement contains the following provision:

> The parties declare that they have contributed to the drafting of this Agreement or have had it reviewed by their counsel before signing it. It is expressly agreed that this Agreement will not be construed against any party on the basis of who drafted this Agreement or who supplied the form of Agreement.

*Doc. 5-1* at 12. Although, once again, the Court is not aware of any Oklahoma case law directly on point, this very explicit attempt by two sophisticated parties to contract out of the default *contra proferentem* rule certainly weighs against its application.

## IV. Conclusion

For the foregoing reasons, the Court finds that the term "hereunder" as used in the forum-selection clause means "under the Agreement" rather than "under this section." Therefore, the forum-selection clause applies to disputes under the entire contract.

Having settled the question of scope, and because neither party has argued that the forum-selection is unenforceable, the Court hereby GRANTS Defendant's Opposed Motion to Transfer Venue to the Western District of Oklahoma (*doc. 5*) and TRANSFERS Plaintiff's claims to the United States District Court for the Western District of Oklahoma.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**